Filed 1/9/14  In re Angel M. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ANGEL M. et al., Persons Coming Under the Juvenile Court Law. | B248797 (Los Angeles County Super. Ct. No. CK84173) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CRYSTAL M.,<br><br>    Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Marguerite Downing, Judge.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

_____

Crystal M. (Mother) appeals from a juvenile court disposition order. She contends that there is insufficient evidence to support dependency jurisdiction over her children pursuant to Welfare and Institutions Code section 300. Mother admitted to a social worker that she was using methamphetamine (meth) to cope with stress. Mother's admitted drug use, coupled with her history of substance abuse, child cruelty and domestic violence, supports dependency jurisdiction over her young children.

## FACTS

Mother has three children: S. (born in 2005), Angel (2008) and April (2012).[1] Juan M. (Father) is the father of Angel and April. In 2009, the Department of Children and Family Services (DCFS) received referrals regarding Mother's family, and instituted voluntary services based on substantiated allegations of emotional abuse. Mother obtained a restraining order against Father due to domestic violence. In 2010, Mother was arrested for child cruelty, Father was arrested for domestic violence, and DCFS filed a dependency petition.

In December 2010, the juvenile court sustained allegations that (1) Mother struck two-year-old Angel and burned his face and arm with a cigarette, causing unreasonable pain and suffering. Father knew of the abuse and failed to protect the child; (2) Mother and Father engaged in physical altercations in the children's presence; and (3) Father has a history of substance abuse and currently uses meth and alcohol, rendering him incapable of providing regular child care. After Mother and Father participated in court-ordered services, Angel returned to Mother's care in September 2011. The first dependency case terminated in May 2012, despite a February 2012 report from the paternal grandmother (PGM) that Mother and Father were "again using drugs," leaving Angel unsupervised and unfed.

In February 2013, four-year-old Angel asked the staff at his school for help because Mother and Father "were fighting over [one-month-old April] while [ ] Mother

_____

[1]     S. is not in Mother's custody and is not involved in this proceeding.

2

was holding the baby." Father yelled at Angel and called him names. DCFS promptly went to the home of the paternal grandparents, where Mother and her family were living. The home was clean and appropriate, with plenty of food and beds.

During the initial visit, Mother understood the social worker's questions, did not seem paranoid or hallucinatory, and was not itching or picking at her skin. However, the social worker "observed that Mother appear[ed] to present excessive weight loss, body twitching, excessive fidgeting and appeared unable to be at ease while sitting speaking with" the social worker. Mother indicated that "taking care of a newborn child is both stressful and a lot of work." Father's failure to assist her with April "has caused arguments between them and they have argued in front of the children" on a daily basis, though Mother denied fighting with Father while holding April.

When questioned about her tics and informed that she appeared to be using meth, Mother "admitted that she has been 'smoking meth' to help her cope with the stress at home." She does not use the drug inside the home or in the presence of the children. "Mother stated that she last smoked 'meth' yesterday." She agreed to drug test, adding that she would most likely be positive for meth.[2] Mother noted that she lost custody of her daughter S. and does not want to lose Angel or April.

Father did not appear to be drugged or drunk during his interview. He stated that Mother constantly threatens to leave him, which causes verbal arguments. He accused Mother of wanting to go "out to the club" and "party." Father denied having physical altercations or fighting over April. He maintained that he helps take care of April and enjoys holding the baby. Father denied using drugs, but "stated that he normally drinks a couple of 40's (40 oz. beer) every day to relax." Father indicated that he enrolled in an in-patient drug rehab program a year ago to address his addiction to meth and has not used the drug since completing the program. He was quiet and made no statement when asked if Mother uses drugs. Father is a nonactive member of the Compton Locos gang.

---

**2**     No drug test was administered, although a sheriff's field sobriety test indicated that Mother was sober.

The paternal grandfather (PGF) stated that despite his encouragement, Father is not motivated to work or provide for his family. The PGF no longer sees physical attacks between Mother and Father. He attributed their former aggressive behavior to drug use. He is unaware of any current drug use. The PGM similarly described past aggressive behavior by Mother and Father: she was a victim of their violence. Now, they disagree with each other without physical attacks. She is Angel's primary caretaker.

On February 14, 2013, DCFS filed a petition on behalf of Angel and April. It alleged that Mother has a history of drug use and is a current user of meth, and Father has a history of drug abuse, including meth, and is a current abuser of alcohol. The parents' substance abuse renders them incapable of providing regular care and supervision of the children. Mother and Father denied the allegations. The court found a prima facie case for detaining the children. They were placed in the home of the paternal grandparents. Monitored visits were authorized.

DCFS submitted a jurisdiction report in April 2013. Angel was healthy and cheerful in the care of the paternal grandparents. Angel stated that he saw Mother throw out all of his clothing, leaving him nothing to wear. The PGM confirmed that this occurred twice, necessitating the purchase of new clothing. Angel calls Mother "Crystal" because he has lived with the PGM during his formative years. Angel could not confirm or deny the incident in which his parents fought over April, although he described having Mother pinch the skin on the back of his hand as a punishment. Angel also stated that Father "drinks a big drink and he plays with me." He does not understand the concept of intoxication, but indicated that Father did not act in a strange or inappropriate manner when he drinks. Angel likes living with his grandparents.

Mother denied fighting with Father over April, though they argue because Father does not help her with the children and she was stressed and exhausted. Mother acknowledged that Father "drinks some beers" but denied that he becomes intoxicated, just more relaxed and willing to play with Angel. Father similarly denied fighting over April, and reiterated that he stopped using meth during a rehab program. He denied ever saying that he drinks beer every day. On March 6, 2013, Mother tested negative for

4

drugs and Father tested positive for alcohol. Mother reported that she experimented with drugs when she was in the eighth and ninth grades, but denied current drug abuse. Both parents admitted to a history of domestic violence and drug abuse, leading to DCFS intervention and a dependency case in 2010.

The PGM could not confirm Mother's drug use: although she has not seen Mother take drugs, she suspected that she might be using because Mother looked so thin and weary, and also because Mother threw Angel's clothing out twice, for no reason. The paternal grandparents asked Mother about drug use, which she denied. The PGF denied that Father drinks daily, only a few beers when he has money. He described Father as a responsible drinker. The PGF expressed concern about the children because Mother was very thin, tired, and would scratch herself. He and the PGM are away at work all day and they do not know what happens in the home while they are gone.

DCFS assessed the children as being at risk of harm. Mother admitted to recently using meth while caring for the children, as a way of coping with stress. The PGM described odd behavior and concerns of possible drug abuse by Mother. Further, Father's use of alcohol is concerning because he has substituted one substance (meth) for another (alcohol), which may be a gateway into a relapse to harder drug abuse. It is likely that Father uses alcohol while caring for the children.

At the jurisdiction hearing on April 10, 2013, counsel for the parents and the children asked the court to dismiss the petition for lack of evidence. In its ruling, the court observed that "this is a marginal case." Nevertheless, DCFS met its burden by a preponderance of the evidence, given the totality of the circumstances. Specifically, four-year-old Angel asked for assistance because he was concerned for the safety of his baby sister. The parents have a history of drug use, and Mother engaged in "bizarre behavior" by throwing out Angel's clothing, leaving him with only the attire he was wearing. Mother presented herself to the social worker as being excessively thin, and was twitching and fidgeting, which is an indication of drug use. Mother inappropriately pinched Angel as a punishment.

The court sustained an allegation that Mother has a history of drug abuse and currently uses meth, rendering her incapable of providing regular child care and supervision. It dismissed the count against Father. Because Father is nonoffending, and the family appears to be taking advantage of drug programs, the court released the children into parental custody under the supervision of DCFS and the court. Mother was ordered to take a parenting class and complete a high school diploma or equivalent. Angel was given counseling services, and Mother was ordered to complete seven random, on-demand consecutive drug tests. If any tests were positive, she would be required to complete a drug program. A timely appeal from the disposition ensued.

## DISCUSSION

Mother contends that the record does not support dependency jurisdiction, because Angel and April are not "at risk of suffering physical harm as the result of [M]other's illicit drug use." We review jurisdictional findings to see if substantial evidence, contradicted or uncontradicted, supports them. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "'"In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Sustained findings require (1) neglectful conduct by the parent; (2) causation; and (3) a substantial risk of serious physical harm or illness.[3] (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) "[P]roof of current risk of harm is not required to support the initial exercise of dependency jurisdiction under section 300, subdivision (b), which is satisfied by a showing that the child *has suffered* or there is a substantial risk that the

---

[3]     The court may exercise jurisdiction if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his [ ] parent [ ] to adequately supervise or protect the child . . . or by the inability of the parent [ ] to provide regular care for the child due to the parent's . . . substance abuse." (Welf. & Inst. Code, § 300, subd. (b).)

6

child will suffer serious physical harm or abuse." (*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1261.) Evidence of past conduct may be used to establish dependency jurisdiction, to the extent that it is probative of current conditions. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1438; *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1394.) The juvenile court need not wait until the child is actually harmed before intervening. (*In re Eric B.* (1987) 189 Cal.App.3d 996, 1003.)

The courts afford special protection to "children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety." (*In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 824.) While an older child may be able to avoid physical danger and seek care from responsible adults if neglected by a parent, infancy is "an inherently hazardous period of life" with special vulnerability. (*Id.* at p. 825; *In re Drake M.* (2012) 211 Cal.App.4th 754, 767; *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1004 [11-year-old child could avoid the physical dangers that make infancy hazardous].) The primary concern is the child's best interests and the provision of a safe home free from the negative effects of substance abuse. (Welf. & Inst. Code, § 300.2; *In re B.T.* (2011) 193 Cal.App.4th 685, 692.)

At ages four and three months, respectively, Angel and April were afforded special protection due to their vulnerability. Indeed, given their youth, "the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 767.)

Angel sought help from school staff members because he feared for the safety of his newborn sister: he saw Mother fight with Father while holding April. There is no reason to doubt this young boy's concerns or motivations. Mother was interviewed and candidly admitted using meth one day earlier. Father was silent when asked whether Mother was using drugs. Mother had the appearance and mannerisms of a meth user, as well as a history of substance abuse. The juvenile court discounted Mother's recanting of current drug abuse, made after the children were removed from her custody.

7

DCFS has been involved with Mother and Father since 2009. Mother showed unusual cruelty to Angel by burning him with a cigarette on his face and arm when he was two years old. This occurred while Mother was being overseen by DCFS, and led to a sustained petition against Mother for child abuse in 2010. Both the PGM and the PGF acknowledge that Mother and Father become violent and aggressive while using drugs. Angel refers to Mother as "Crystal" because he views the PGM as his parent, not Mother.

Given the parental history of drug abuse, violence and child abuse, the record supports juvenile court jurisdiction. Demonstrating remarkable recall for a four-year-old child, Angel informed the DCFS social worker that "Crystal throws my clothes away" and punished him inappropriately by pinching his hand. The PGM confirmed that Mother twice threw out all of Angel's clothing for no reason, leaving him only the clothes on his back.[4] When a child this young can describe irrational parental behavior, and alerts responsible adults that his baby sister is in danger of harm from domestic violence, the courts need not wait for disaster to befall a helpless infant before intervening to ensure that drugs are not inducing Mother's rage and strange behavior, especially since Mother frankly admitted using meth to relieve stress.

State action may be exercised to prevent harm. "The idea that state authority can be mobilized only after the fact is untenable. Power is not disabled from dealing with latent risk. The state, having substantial interests in preventing the consequences caused by a perceived danger is not helpless to act until that danger has matured into certainty. Reasonable apprehension stands as an accepted basis for the exercise of state power." (*In re Eric B.*, *supra*, 189 Cal.App.3d at p. 1003.) Mother's recurrent drug use and her history of child cruelty and abuse sufficiently justify dependency jurisdiction to avert harm to Angel and April.

---

**4**      Mother posits that the clothing incidents are "remote in time," occurring "presumably" before the prior dependency case in 2010. Given that Angel was born in 2008, and recalls the clothing incidents, it is not reasonable to infer that he described eccentric behavior occurring when he was one or two years old.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


FERNS, J.*

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.